Case 5:18-cv-00121   Document 32   Filed on 02/10/20 in TXSD   Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
February 10, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| CYNTHIA MARES,<br><br>　　　Plaintiff,<br>VS.<br><br>TEXAS WEBB COUNTY,<br><br>　　　Defendant. | §<br>§<br>§<br>§　CIVIL ACTION NO. 5:18-CV-121<br>§<br>§<br>§<br>§<br>§ |

## MEMORANDUM AND ORDER

Pending is Defendant Webb County, Texas's Motion for Summary Judgment (Dkt No. 14). The Court has carefully reviewed the parties' arguments, the record, and the applicable law. For the reasons below, the County's Motion for Summary Judgment (Dkt. No. 14) is **GRANTED IN PART** and **DENIED IN PART**.

**I.  Background**

The Webb County Commissioners Court is the County's principal governing body, which makes all legislative, executive, administrative, and judicial decisions. *Henry v. Cox*, 520 S.W.3d 28, 36 (Tex. 2017). A state statute, the Texas Open Meetings Act, requires that the Commissioners Court provide adequate notice of its "meetings" to apprise the public of topics that are up for discussion. *City of Laredo v. Escamilla*, 219 S.W.3d 14, 19 (Tex. App.—San Antonio 2006).

Plaintiff began working for the County as Executive Director of Community Action in 1999 (Dkt. Nos. 17-15 at 2, 14-3 at 36). In 2005, the County promoted her to Director of Risk Management (*id.*). A year later, Plaintiff began her role as Director

O

of Administrative Services, which encompassed Risk Management and a newly created Human Resources Department (*id.*). As Director of Administrative Services, Plaintiff's annual salary was around $105,000 (Dkt Nos. 14-3 at 40, 14-4 at 33).

Plaintiff's career from 2006 to 2013 is not described in the record. The record reveals, however, that by 2014 Plaintiff had job performance problems (*id.*). Notably, Plaintiff substituted the County's wage-and-hour plan, known as the "Condrey" plan, with an unapproved plan that included over $200,000 in raises (Dkt. Nos. 14-4 at 12, 14-5 at 6). As a result, the Commissioners Court posted a notice that it intended to evaluate Plaintiff's performance at its October 2014 meeting. The notice read:

> Discussion and possible action to evaluate the performance of the Administrative Services director regarding the recent implementation of the Condrey wage and pay classification scale; with additional action to consider any disciplinary measures deemed appropriate; and any other matters incident thereto.

(Dkt. No. 17-9 at 4).

At the meeting, the Commissioners Court placed Plaintiff on a six-month probation (Dkt. No. 17-10 at 8). According to Leroy Medford—Executive Administrator to the County Judge and Plaintiff's longtime supervisor—Plaintiff performed satisfactorily during the probation (Dkt. Nos. 14-4 at 13–14). Thus, the Commissioners Court removed Plaintiff from probation in early 2015, and Plaintiff remained in her position as Director of Administrative Services (Dkt. No. 14-5 at 10).

However, Plaintiff continued to have "performance issues" in 2015 and early 2016 (Dkt. No. 14-4 at 17, 35). Mr. Medford eventually reported to the Commissioners Court that Plaintiff was unable to handle her workload (Dkt. No. 14-4 at 17). Webb

O

County Judge Tano Tijerina[1] also spoke to Plaintiff about "splitting" Administrative Services into two departments to ease her workload (Dkt. Nos. 14-4 at 18, 14-5 at 28).

Around the same time, the Commissioners Court created a "voluntary separation plan" for employees at least 65 years old and eligible for retirement (Dkt. Nos. 14-4 at 23, 14-5 at 13). Mr. Medford approached eligible employees, including Plaintiff, to "see if they were interested" (Dkt. Nos. 17-14 at 2, 14-4 at 24). Plaintiff "declined to take" the plan (Dkt. No. 14-4 at 24).

The Commissioners Court held a meeting on September 26, 2016. Before the meeting, it posted a notice-agenda that listed 60 items to be discussed, including "auditing," "community action," "engineering," "indigent healthcare services," and "purchasing." Item 49 focused on the County's budget and read:

> 49. Discussion and possible action to adopt the county budget for fiscal year 2016–2017 pursuant to Chapter 111 of the Texas Local Government Code. The Court may make any modifications to the proposed budget that it considers warranted by law and required by the interest of the taxpayers by majority vote.

(Dkt. No. 17-1 at 35).

At the meeting, Judge Tijerina called Plaintiff to the podium and, acting under Item 49, motioned to split Administrative Services into two departments: Human Resources and Risk Management (Dkt. No. 17-2 at 41). Under the judge's proposal, Plaintiff would serve as Director of Human Resources at an annual salary of $75,000,

---

[1] Webb County Judge Tano Tijerina "presides over" and is a "voting member" of the Commissioners Court. WEBB COUNTY JUDGE, https://www.webbcountytx.gov/CountyJudge/ (last visited Feb. 6, 2020).

O

which represented an approximate $30,000 pay cut (*id.*). After a vote, the motion was approved (*id.*).

Plaintiff assumed her new position, but two months later, in November 2016, filed this case in state court, alleging the County violated the Texas Open Meetings Act when it split Administrative Services and reduced her salary without providing adequate notice (Dkt. No. 1-1 at 9). Plaintiff alleges she also filed a charge of discrimination with the Texas Workforce Commission (TWC) in December 2016 (Dkt. Nos. 17 at 9, 17-15 at 3), but the record lacks any proof the charge was actually filed.

In her new role, Plaintiff continued to have conflicts with Mr. Medford. At some point, Mr. Medford requested that Plaintiff communicate "everything" to him in writing and asked his secretary to sit in on his meetings with Plaintiff so that he felt "comfortable" (Dkt No. 14-4 at 20–21). Mr. Medford also began documenting e-mail communications to and from Plaintiff, which were about: employee overpayment; Plaintiff's potential violations of County policy and procedure; a County executive admonishing Plaintiff for not taking initiative; Plaintiff providing misinformation; Mr. Medford noting Plaintiff had not responded to his e-mails; and Plaintiff's upcoming performance evaluation (Dkt. No. 17-13 at 3–34).

Based on these e-mail exchanges, Mr. Medford prepared a report on Plaintiff's performance, which he provided to the Commissioners Court in August 2017 (Dkt. No. 14-4 at 21–22). Within weeks, Mr. Medford sent a "Memorandum" to Plaintiff that included the documented e-mails to apprise her of the information in his report

O

(*id.*; Dkt. No. 17-3 at 2). On August 28, 2017, the Commissioners Court held a meeting where it terminated Plaintiff's employment (Dkt. No. 14-4 at 22).[2]

After her termination, Plaintiff twice amended her state-court petition, and the County removed the case here (Dkt. No. 1-1 at 1, 255, 320).[3] In her petition, Plaintiff asserts claims for (1) violations of the Texas Open Meetings Act (TOMA); (2) Age Discrimination under the Texas Labor Code; (3) First Amendment Retaliation under 42 U.S.C. § 1983; (4) Retaliation under the Texas Labor Code, and in the alternative, (5) a claim under the Texas Whistleblower Act (Dkt. No. 1-1 at 320–21).

The County now moves for summary judgment on all of Plaintiff's claims except her alternative claim under the Texas Whistleblower Act (Dkt. No. 14). Plaintiff filed a response (Dkt. No. 17), and the County filed a reply (Dkt. No. 18).

## II. Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). The Court views the evidence in a light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the nonmovant will be unable to

---

[2] After her termination, Plaintiff applied for unemployment benefits with the TWC (Dkt. No. 17-15). The TWC initially found Plaintiff disqualified from benefits (Dkt. No. 17-11 at 4) but awarded benefits on appeal, concluding the County's reasons for Plaintiff's termination did not amount to misconduct (*id.* at 4–7).

[3] Plaintiff alleges that after her termination, she also amended her charge of discrimination to include a retaliation claim (Dkt. No. 17-15 at 4), but there is no evidence in the record to support that assertion.

O

establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "The nonmovant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted). Instead, the nonmovant must "cite to particular parts of ... the record." *Vann v. Gilbert*, 482 F. App'x 876, 880 (5th Cir. 2012).

"Further, it is not the function of the Court to search through the record on the nonmovant's behalf for evidence which may raise a fact issue." *Vivar v. Benjamin's Behavioral Health Servs., PLLC*, No. H-18-3060, 2019 WL 6766842, at *2 (S.D. Tex. Dec. 11, 2019) (Hittner, J.) (citation omitted). If a reasonable jury could not return a verdict for the nonmoving party, then summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

III. **Analysis**

  a. <u>Plaintiff's claim under the TOMA[4]</u>

Plaintiff argues that the County violated the TOMA and asks the Court to void the Commissioners Court's actions at the September 2016 meeting, reinstate her as Director of Administrative Services, and award backpay of her previous salary as well

---

[4] As an initial matter, the parties dispute whether Plaintiff's former position, Director of Administrative Services, is of "special interest to the public" (Dkt. Nos. 14 at 13, 17 at 11-2), in which case the TOMA would require that the County's notice be more specific than generally required. *City of Laredo v. Escamilla*, 219 S.W.3d 14, 19 (Tex. App.—San Antonio 2006). The Court need not answer this question because it finds the County's notice is inadequate under the TOMA's general standard, such that it would also be inadequate under the TOMA's more burdensome standard.

O

as costs and attorney's fees (Dkt. No. 1-1 at 326–27). In its motion, the County argues that, as a matter of law, the "budget" provision in Item 49 of its agenda provided enough notice of the changes to Plaintiff's position and salary (Dkt. No. 14 at 9, 11).

The purpose of the TOMA is to ensure that the "public has the opportunity to be informed concerning the transactions of public business." *Terrell v. Pampa Indep. Sch. Dist.*, 572 S.W.3d 294, 298 (Tex. App.—Amarillo 2019). The statute provides that a "governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body." TEX. GOV. CODE § 551.041. Although it is unnecessary for the notice to "state all of the consequences which may flow from consideration of the topic," the notice must still "alert the general public to the topic under consideration." *City of Rio Grande City v. BFI Waste Serv. of Tex., LP*, No. 04-15-00729-CV, 2016 WL 5112224, at *11 (Tex. App.—San Antonio 2016) (citations omitted). In evaluating a notice, the Court compares its content with the actions taken at the meeting. *Odessa Tex. Sheriff's Possev.*, 215 S.W.3d 458, 473 (Tex. App.—Eastland 2006) (citation omitted). Where, as here, the content of a notice is undisputed, its adequacy is a question of law. *Palacios v. City of Crystal City, Tex.*, No. DR-12-CV-040-AM-CW, 2014 WL 11320459, at *5 (W.D. Tex. Sept. 30, 2014).

Item 49 of the County's notice-agenda provided that the Commissioners Court "may make any modifications to the proposed budget that it considers warranted by law." So, the question is whether the content of that budgetary provision is sufficiently specific to alert the public that the County may split its Administrative Services Department or change Plaintiff's position and salary. The answer is no.

O

Caselaw makes clear the County's notice was not adequately tailored to its actions at the September 2016 meeting so as to meaningfully inform the public about the proposals up for discussion. For example, in *Sokolow v. City of League City*, 37 F. Supp.2d 940, 947 (S.D. Tex. 1999), a city gave notice it would "[d]iscuss and possibly take action on the duties [and] responsibilities of the City Attorney" and, at the meeting, terminated its city attorney. In *Palacios*, 2014 WL 11320459, at *6, a city gave notice it intended to "[c]onsider the continued employment of the City manager," and, at the meeting, terminated its city manager. In *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 765 (Tex. 1991), a city gave notice it would consider a specific ordinance, and, at the meeting, adopted the ordinance. And in *Rettberg v. Dept. of Health*, 873 S.W.2d 408, 413 (Tex. App.—Austin 1994), a state board gave notice it would "discuss and possibly act on the evaluation" of its executive secretary, and, at the meeting, terminated the executive secretary.

Here, in contrast, the County's notice is plainly removed from its actions at the meeting. Remarkably, the notice is devoid of any language that could alert the public that the County might make employment or personnel decisions, much less that it might split Administrative Services—a then decade-old department—and reduce Plaintiff's salary by approximately $30,000. Further, the County has not provided authority, nor is the Court aware of any, for the argument that a general budgetary provision sufficiently notices a department split and significant personnel changes.

The record also shows that the County has a history of providing adequate notice, so its departure from that practice is telling. In May 2014, for example, the

County gave notice it would "evaluate the performance of the Administrative Services director" and "consider any disciplinary measures deemed appropriate," and at the meeting, placed Plaintiff on probation (Dkt. No. 17-9 at 4). Moreover, from 2010 to 2014, the County evaluated Plaintiff's performance using the following notice:

> Discussion and possible action to evaluate the performance of Webb County department heads who are subject to the authority of the Webb County Commissioners Court, to wit:
>
> 1. Administrative Services
> \*\*
> Action to be taken by the Commissioners Court may include continuation of employment, reassignment, modification of duties, disciplinary action, dismissal, or other actions. The Commissioners Court may take such other action as may be necessary to implement its decisions, including, but not limited to, appointment of interim department heads.

(Dkt. Nos. 17-3 at 3, 17-4 at 3, 17-5 at 3, 17-6 at 3, 17-7 at 3).

The County's ability to provide adequate notice is therefore apparent, and its retreat from that custom further undercuts the adequacy of its notice here. *See River Road Neighborhood Ass'n v. South Tex. Sports*, 720 S.W. 2d 551, 557 (Tex. App.—San Antonio 1986) (finding notice deceptive and insufficient "in view of the well-established custom and practice of the District"); Hon. Joe F. Grubbs, Office of the Attorney General, Opinion No. JC-0057 (May 26, 1999) ("[T]he city's usual practices in formulating the notice . . . are relevant to determining whether or not the notice . . . complied with the Open Meetings Act.").[5]

---

[5] While not binding, an opinion from the Texas Attorney General is persuasive. *Van Houten v. City of Forth Worth*, 827 F.3d 530, 534 (5th Cir. 2016).

O

Other factors call into question whether the County even intended to provide notice of the actions challenged in this case. For instance, although the County split Administrative Services under a "budget" notice item, Mr. Medford and Judge Tijerina testified the County did so because of Plaintiff's performance and *not for budget reasons* (Dkt. No. 14-4 at 24, 32). And while Judge Tijerina testified he spoke to Plaintiff about splitting the department in 2016, he also testified he had not considered a department split until he proposed it at the September 2016 meeting:

> Q: [Judge Tejerina,] coming up to the September 2016 meeting, September 26, 2016, when [Plaintiff's] demotion occurred . . . did you formulate an idea about splitting up the two departments and removing one department from her?
>
> A: At the time that I called her up right before is probably the time that I thought about it.
>
> Q: Did you think about it before the meeting or did you think about it right in the meeting?
>
> A: It was at the meeting.
>
> Q: Okay. Did you have that plan in mind before the meeting?
>
> A: I don't recall. I don't think so.

(Dkt. No. 14-5 at 33).

Judge Tijerina's testimony that he had not even *thought* about a department split until the September 2016 meeting suggests the Commissioners Court used the "budget" notice item in its agenda as an after-the-fact justification for its actions. Indeed, Judge Tijerina apparently operated under the misguided assumption that the Commissioners Court could split the Administrative Services Department without providing adequate notice to the public:

O

> Q: Again, let me make sure I understand. Is your answer that under [Item] 49, as you just read, you can split [the Administrative Services Department]?
>
> A: Yes.
>
> Q: Without sufficient notice to the public?
>
> A: Yes.

*Id.* at 34. But as explained already, Judge Tijerina's assumption is incorrect.

In the end, the County's burden to provide adequate notice is light. A reference to "personnel" changes may have been adequate in this case, *see Barrera v. Tri-Cty. Juvenile Prob. Bd.*, No. 04-11-00071-CV, 2011 WL 3502367, at *3 (Tex. App.—San Antonio 2011), but even that is absent from the County's notice. Instead, the County justifies the split of a department and reduction in Plaintiff's salary under the guise of the word "budget." But almost any change in County administration will have some effect on the budget. If local government could simply provide notice of "any modifications to the proposed budget," the TOMA would become a dead letter.

So, the Court finds that the County's "budget" notice-item, Item 49, was not sufficiently specific to apprise the public of its actions at the September 2016 meeting. Thus, the County is not entitled to summary judgment on this claim. Given Plaintiff filed only a response to the County's motion, asking that the Court deny the County's motion for summary judgment, and not a cross-motion for summary judgment requesting any particular relief, she is **ORDERED** to file briefing that addresses the relief she seeks for the County's TOMA violation, as provided at the end of this Order.

    b. <u>Plaintiff's Claim for Age Discrimination under the Texas Labor Code</u>

Plaintiff alleges, verbatim:

> [The County's] early retirement plan was not a voluntary program. Those age 65 and older were targeted for layoff. The offer was specifically aimed at older workers and conditioned upon age. Employees accepting the incentive did not sign releases with explanations of their rights, not given at least 21 days to have a chance to consult their attorneys or other advisors, and not given 7 days to rescind their acceptance of an early retirement incentive.

(Dkt. No. 1-1 at 327). The County argues Plaintiff has not proven a *prima facie* case of age discrimination (Dkt. No. 14 at 14, 15).

"'Texas courts apply the familiar *McDonnell Douglas* burden-shifting framework to age discrimination claims' under the Texas Labor Code." *Gu. v. INVISTA S.a.r.l.*, 682 F. App'x 316, 317 (5th Cir. 2017) (quoting *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012)). Under that framework, a plaintiff is entitled to a "presumption of discrimination if [s]he can meet the minimal initial burden of establishing a *prima facie* case." *Id.* The burden then shifts to the employer to show a "legitimate, nonretaliatory reason for the adverse employment action." *Id.* If the employer meets its burden, "the burden shifts back to the plaintiff to make an ultimate showing of intentional discrimination." *Id.*

To establish a *prima facie* case, a plaintiff must show she was: (1) a member of a protected class; (2) qualified for the position; (3) terminated; and (4) replaced by someone younger. *Cruz v. Tex. Health and Human Servs. Comm.*, No. 1:16-CV-072, 2017 WL 3605234, at *3 (S.D. Tex. Aug. 22, 2017) (Hanen, J.) (citation omitted); *see Vann v. Mattress Firm, Inc.*, 626 F. App'x 522, 525 (5th Cir. 2015). Plaintiff has not

O

even alleged—much less offered evidence to show—that she was replaced by someone younger than she. Thus, the County is entitled to summary judgment on this claim.[6]

c. Plaintiff's First Amendment Retaliation Claim under 42 § U.S.C. 1983

The only speech Plaintiff identifies is "the right to file suit to challenge the Texas Open Meetings Act" (Dkt. No. 17 at 21). In other words, Plaintiff claims her lawsuit alleging a TOMA violation is protected speech and its filing "resulted in" her termination (Dkt. No. 1-1 at 327). The County argues that Plaintiff's speech is not a matter of public concern and "there is no evidence [she] was terminated because she filed her original lawsuit" (Dkt. No. 14 at 18).

To establish a section 1983 First Amendment retaliation claim, a plaintiff must show: (1) she suffered an adverse employment decision, (2) her speech involved a matter of public concern, (3) her interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's conduct. *Culbertson v. Lykos*, 790 F.3d 608, 617 (5th Cir. 2015).

Speech involves a matter of public concern if "it can be fairly considered as relating to any matter of political, social, or other concern to the community" or is "a subject of general interest and of value and concern to the public." *Gibson v. Kilpatrick*, 838 F.3d 476, 482 (5th Cir. 2016) (cleaned up). Whether speech involves a "matter of public concern is a question of law that must be resolved by the court," *Graziosi v. City of Greenville, Miss.*, 775 F.3d 731, 736 (5th Cir. 2015), and is

---

[6] Plaintiff's response also raises a new claim under the Age Discrimination in Employment Act (ADEA) (Dkt. No. 17 at 18–20). Plaintiff has not explained the basis for the Court's review of her untimely ADEA claim. If Plaintiff wishes to pursue that claim, she may file supplemental briefing that addresses why her ADEA claim is properly before the Court, as provided at the end of this Order.

O

"determined by the content, form, and context of a given statement, as revealed by the whole court record," *Davis v. McKinney*, 518 F.3d 304, 311 (5th Cir. 2008).

Here, Plaintiff reasons her lawsuit is a matter of public concern because it "pertains to a violation of the Texas Open Meetings Act and subsequent retaliation for raising and opposing such violation" (Dkt. No. 17 at 20–21). Because the TOMA requires notice *to the public*, Plaintiff argues this lawsuit "protects the public's rights to require Webb County to conduct business in the open" (*id.* at 21). Yet the thrust of Plaintiff's lawsuit is not public, but personal. *Singer v. Ferro*, 711 F.3d 334, 342 (2d. Cir. 2013) (lawsuit not of public concern where its "thrust" was "not towards remediating" corruption but towards "entirely personal relief"). Specifically, Plaintiff challenges a single notice-item at a particular meeting, only as applied to her, and does not attack the County's notice-practice generally. *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d. Cir. 1991) (plaintiff "was not on a mission to protect the public" in finding suit not of public concern). Thus, this case is "structured like any other personal dispute which private litigation is intended to resolve. Whatever the outcome of [this] suit, Plaintiff would [be] the primary beneficiary, and the remainder of Americans would [benefit] only in the most attenuated of ways." *Baker v. Mecklenburg Cty.*, 853 F. Supp. 889, 896 (W.D. N.C. 1994).

Furthermore, the Fifth Circuit has explained that a "lawsuit brought in the context of a continuing feud" rather "than against a backdrop of widespread debate in the community," is not a matter of public concern. *Lumpkin v. Aransas Cty., Tex.*, 712 F. App'x. 350, 358 (5th Cir. 2017) (citation omitted). There is nothing in the record

O

to indicate Plaintiff filed this lawsuit "against the backdrop of widespread debate in the community." Far from it, Plaintiff filed this case in the context of a longstanding dispute with the Commissioners Court regarding her employment, which includes: Plaintiff's evaluation and probation in 2014; her demotion in 2016; various negative performance evaluations; and her eventual termination in 2017. The context in which Plaintiff's lawsuit arises, within a protracted employee-employer dispute, therefore "militates against a finding that her speech was public in nature." *Id.*

Moreover, Plaintiff seeks to recover personal relief in this case—costs, attorney's fees, reinstatement, and back-pay—and not relief implicating the general public, which underscores that this case is a matter of personal interest to Plaintiff. *See Oscar Renda Contracting, Inc. v. City of Lubbock, Tex.*, 463 F.3d 378, 383 (5th Cir. 2006) ("If the lawsuit is only a matter of personal interest to the employee, it is not considered a matter of public concern." (citation omitted)). Notably, Plaintiff does not seek injunctive relief affecting how the Commissioners Court will provide notice of its meetings in the future. *See Gibson*, 838 F.3d at 485 (finding lawsuit was of private concern where plaintiff "sought rectification for himself" and not "damages implicating the public," such as injunctive relief); *Harmon v. Dallas Cty., Tex.*, 294 F. Supp.3d 548, 571–72 (N.D. Tex. 2018) (finding lawsuit was not a matter of public concern where plaintiff sought to void termination and back-pay).

Accordingly, the Court finds this lawsuit is not a matter of public concern. Thus, the County is entitled to summary judgment on this claim.

O

> d. <u>Plaintiff's Claim for Retaliation under the Texas Labor Code</u>

Plaintiff alleges:

> Plaintiff's filing of a charge of discrimination with the Texas Workforce Commission, Civil Rights Division on or about December 5, [2016] resulted in her being ostracized at work and ultimately her employment termination by the Commissioners court at the August 28, 2017 meeting. Defendant's acts against Plaintiff were in retaliation for Plaintiff's report and would not have occurred when they did but for the report.

(Dkt. No. 1-1 at 328). The County argues Plaintiff has not established a *prima facie* case of retaliation (Dkt. No. 14 at 22).

The Texas Commission on Human Rights Act (TCHRA), codified in the Texas Labor Code, "prohibits employers from engaging in retaliatory action against an employee for opposing a discriminatory practice." *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 137 (Tex. 2015) (citation omitted). Because the *McDonnell Douglas* burden-shifting framework applies to retaliation claims under TCHRA, *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 782 (Tex. 2018), a plaintiff must first meet her initial burden of establishing a *prima facie* case. To accomplish that, a plaintiff must show "(1) she engaged in an activity protected by the TCHRA, (2) an adverse employment action occurred, and (3) there exists a causal link between the protected activity and the adverse action." *Id.*

Filing a charge of discrimination is protected activity. *Gotch v. UPS Ground Freight, Inc.*, No. H-13-375, 2014 WL 4071573, at *2 (S.D. Tex. July 25, 2014) (Ewing, J.). Here, Plaintiff alleges she filed a charge but does not meet her summary judgment

burden to cite to evidence of the charge in the record.[7] FED. R. CIV. P. 56(c)(1)(A). And while the Court is not under any duty "to sift through the record in search of evidence to support a party's opposition to summary judgment," *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006), it has done so here and is satisfied that the charge is not evidenced in the record.[8] Accordingly, Plaintiff has failed to establish a *prima facie* case under the Texas Labor Code.

Even if Plaintiff had established a *prima facie* case, the County established a legitimate reason for Plaintiff's termination—Plaintiff's job performance. The County provided evidence that Plaintiff had been on probation, along with a memorandum that detailed Plaintiff's "continued deficiencies" leading up to her termination (Dkt. Nos. 17-9 at 4, 17-13 at 2). Consequently, the burden of proof would shift back to Plaintiff "to raise a fact issue that [the County's] explanation is a pretext and that she would not have been terminated but-for filing of [a TWC] charge." *Alamo Heights*, 544 S.W.3d at 790. As explained below, Plaintiff has failed to do so.

In evaluating but-for causation, the Court examines all of the circumstances, including: (1) temporal proximity between the protected activity and the adverse

---

[7] While Plaintiff does attach her own affidavit in which she alleges she filed the charge (Dkt. No. 17-15 at 3), "[a] self-serving affidavit alone . . . will not defeat a motion for summary judgment." *Spencer v. FEI, Inc.*, 725 F. App'x 263, 268 (5th Cir. 2018) (citing *DirectTV, Inc. v. Budden*, 420 F.3d 521, 531 n.49 (5th Cir. 2005)).

[8] Plaintiff seems to suggest her *lawsuit* is also protected activity (Dkt. No. 17 at 29). But Plaintiff initially filed a lawsuit alleging only a TOMA violation (Dkt. No. 1-1 at 9) and did not amend her suit to include discrimination claims until after her termination (*id.* at 255). As a result, Plaintiff cannot show the County terminated her in retaliation for filing a lawsuit that opposed a discriminatory practice. *See Vasquez v. Nueces Cty., Tex.*, 551 F. App'x 91, 93 (5th Cir. 2013) (per curiam) ("Because [the plaintiff] did not file her grievances . . . until after her termination, she did not suffer an adverse employment action in retaliation for filing them.").

O

action, (2) knowledge of the protected activity, (3) expression of negative attitude toward the employee's protected activity, (4) failure to adhere to relevant established company policies, (5) discriminatory treatment in comparison to similarly situated employees, and (6) evidence the employer's stated reason is false. *Id.*

"Temporal proximity is relevant to causation when it is very close." *Alamo Heights*, 544 S.W.3d at 790 (cleaned up). Here, Plaintiff alleges she filed her charge of discrimination in December 2016, and the County terminated her eight months later in August 2017. An eight-month gap "is so long as to be of little, if any, probative value." *Id.* Plaintiff also has not provided argument or evidence that the County expressed a negative attitude toward her supposed charge of discrimination, failed to adhere to established policies, or treated similarly situated employees more favorably. Plaintiff does allege that her supervisor skipped meetings with her and documented her e-mails after she allegedly filed her charge, but those actions would also be reasonable responses to Plaintiff's demonstrated job performance issues.[9]

Thus, the County is entitled to summary judgment on this claim.

### IV. Conclusion

The County's Motion for Summary Judgment (Dkt. No. 14) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the County's motion is **GRANTED** as to Plaintiff's claims for Age Discrimination under the Texas Labor Code, First Amendment Retaliation under 42 U.S.C. § 1983, and Retaliation under the Texas

---

[9] And although Plaintiff relies on the TWC's award of benefits to argue the County's reason for her termination is false, the TWC's "findings and conclusions may not be used as evidence in lawsuits." *Williams v. Aviall Servs., Inc.*, 76 F. App'x 534, 536 (5th Cir. 2003).

O

Labor Code, and **DENIED** as to Plaintiff's claim under the Texas Open Meetings Act. The Clerk of Court is **DIRECTED** to terminate the County's initial Motion for Summary Judgment (Dkt. No. 10), which is now moot. Lastly, the Court **SETS** the following briefing schedule:

1. Plaintiff must file briefing that addresses the relief she seeks for the County's TOMA violation, with citation to proper authority, by March 9, 2020. The County's deadline to respond to Plaintiff's briefing is April 6, 2020.

2. If Plaintiff wishes to pursue the ADEA claim raised in her opposition brief, she must file briefing that addresses the reasons, if any, her ADEA claim is properly before the Court, by March 9, 2020. The County may respond to Plaintiff's briefing by April 6, 2020.

3. The deadline for the County to file a dispositive motion that addresses Plaintiff's alternative claim under the Texas Whistleblower Act (Dkt. No. 1-1 at 321) is March 9, 2020. Plaintiff may respond to the County's motion within 21 days of the County's filing.

It is so **ORDERED**.

**SIGNED** this 10th day of February 2020.

Marina Garcia Marmolejo
United States District Judge